IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| MARGARET ANN BRAILSFORD, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:15-cv-00239-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| FRESENIUS MEDICAL CENTER CNA | ) | |
| KIDNEY CENTERS LLC, and | ) | |
| BIOMEDICAL APPLICATIONS OF | ) | |
| SOUTH CAROLINA, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on a motion to dismiss filed by defendants Fresenius Medical Center CNA Kidney Centers, LLC ("Fresenius") and Bio-Medical Applications of South Carolina, Inc. ("Bio-Medical"). For the reasons set forth below, the court grants defendants' motion.

## I. BACKGROUND

Defendants operate a therapeutic renal patient care treatment center in Claredon County, South Carolina. Am. Compl. ¶ 6. In 2003, defendants hired plaintiff Margaret Ann Brailsford ("Brailsford") as a patient care technician. Id. ¶ 7. Her duties included monitoring the vital signs of patients and initiating and monitoring the dialysis treatment process for patients. Id. In or about 2010, Brailsford became a certified hemodialysis technician, although her job duties remained the same. Id. ¶ 8.

On April 2, 2014, Brailsford called one of the clinic's patients, identified in her complaint as "Patient M," out of the waiting area for his weekly dialysis treatment. Id. ¶ 11. Patient M, who had arrived two hours early for his appointment, became agitated

1

and hostile towards Brailsford because he had to wait for his treatment. Id. ¶ 12. Patient M used profane language and complained that the dialysis chair that he was supposed to use was not clean. Id. Patient M sought out Cheryl Blackwell ("Blackwell"), clinical manager and area director of nursing, to complain about his chair. Id. ¶ 13. Brailsford asked Blackwell if she could switch patients with another hemodialysis technician and Blackwell agreed. Id.

Once the other technician escorted Patient M from the waiting room, he was positioned behind Brailsford's work station. Id. ¶ 14. Patient M then told Brailsford that she "picked the right one to f*ck with today" and stood behind her in a physically threatening manner. Id. As Brailsford walked away, Patient M stated, "you better walk off before I put my foot up your ass." Id. ¶ 15. Brailsford went to nurse Lori Hodge ("Hodge"), who was the team leader on duty at the time, to report the incident. Id. Hodge told Brailsford to speak with Blackwell. Id. However, Brailsford could not find Blackwell in the facility. Id. Brailsford continued to perform her job duties amid intermittent snide and threatening comments from Patient M. Id.

At the conclusion of Patient M's treatment, it became apparent that he had defecated on himself and his chair, leaving bodily fluids and waste in the area where he had been sitting. Id. ¶ 16. While Brailsford and two other technicians were cleaning Patient M's station, Brailsford informed her coworkers that Patient M has AIDS. Id. ¶ 17. Brailsford claims that no patients were in the vicinity when she made this comment. Id. While cleaning, Patient M reentered the area, speaking in a loud and threatening manner. Id. ¶ 18. Another nurse asked Patient M to leave and, when he did not, picked

up the phone to call 911.  Id. ¶¶ 18–19.  Patient M stated, "ya'll don't know who ya'll f*cking with" and turned and fled before the police arrived.  Id. ¶ 19.

The next day, Brailsford reported the entire incident to Blackwell, her supervisor. Id. ¶ 20.  Blackwell responded with a "complete and utter lack of concern."  Id.  Later the same day, Blackwell informed Brailsford that Patient M had filed a complaint against her.  Id. ¶ 21.  During a meeting that day, Leslie Shutz ("Shutz"), a human resources representative, berated Brailsford for having told her fellow staff members that Patient M has AIDS.  Id.  When Brailsford asked if defendants intended to investigate Patient M's physical threats, Shutz stated that she would "get back in touch with her."  Id. ¶ 22.  Defendants later suspended Brailsford without pay.  Id. ¶ 23.  On April 15, 2015, Shutz informed Brailsford that she was being terminated for violating HIPPA and PHI laws.  Id. ¶ 24.

Brailsford contends that her termination was in retaliation for attempting to avail herself of defendants' problem resolution procedure and for a letter sent by another employee a year earlier outlining health and safety complaints.  Id. ¶¶ 24–25.  On November 7, 2014, Brailsford filed a complaint in state court alleging the following causes of action:  (1) breach of contract; (2) breach of contract accompanied by a fraudulent act; (3) violation of public policy; and (4) failure to protect.  On January 16, 2015, defendants removed the case to this court, and on January 23, 2015, defendants filed a motion to dismiss.  Brailsford filed a response on February 9, 2015, and defendants replied on February 18, 2015.

Following a hearing on March 13, 2015, Brailsford filed an amended complaint. The amended complaint changes the identity of the defendants but does not otherwise

differ from the original complaint. Defendants then renewed their motion to dismiss on May 8, 2015, and Brailsford responded on May 21, 2015. This matter has been fully briefed and is ripe for the court's review.

## II. STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. See E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." Id. at 679. Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "Facts pled that are 'merely consistent with' liability are not sufficient." A Soc'y Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

## III. DISCUSSION

Defendants move to dismiss each of Brailsford's claims. As an initial matter, Brailsford voluntarily withdrew her negligence and violation of public policy claims at

the hearing. Although those claims still appear in her amended complaint, her response indicates that she only amended her complaint for the purposes of adding Bio-Medical as a defendant. Therefore, the court dismisses her negligence and violation of public policy claims. The court now turns to Brailsford's breach of contract and breach of contract accompanied by a fraudulent act claims.

### A. Breach of Contract

Defendants move to dismiss Brailsford's breach of contract claim, arguing that she has failed to allege facts changing her at-will employment status. Defs.' Mot. 4.[1]

South Carolina has long recognized the doctrine of employment at-will. See, e.g., Mathis v. Brown & Brown of S.C., Inc., 698 S.E.2d 773, 778 (S.C. 2010). Generally, an at-will employee may be terminated at any time for any reason or for no reason, with or without cause. Stiles v. Am. Gen. Life Ins. Co., 516 S.E.2d 449, 450 (S.C. 1999). "Of course, an employer and employee may choose to contractually alter the general rule of employment at-will and restrict their freedom to discharge without cause or to resign with impunity." Prescott v. Farmers Tel. Co-op., Inc., 516 S.E.2d 923, 925 (S.C. 1999). Because employment is presumed to be at-will, in order to survive a motion to dismiss on a claim for breach of contract of employment, a plaintiff must plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship. Weaver v. John Lucas Tree Expert Co., No. 2:13-cv-01698, 2013 WL 5587854, at *4 (D.S.C. Oct. 10, 2013).

To address Brailsford's breach of contract claim, it is first necessary to determine whether a contract was formed. "It is axiomatic that to recover under a theory of breach

---

[1] All citations to the parties' briefs from this point forward refer to the briefs related to the original motion to dismiss.

of contract, a valid contract must have existed between the parties." Id. at *5. In her amended complaint, Brailsford alleges that a contract between her and defendants arose out of defendants' various policies, promises, oral assurances, as well as an employee handbook.[2] Am. Compl. ¶¶ 28–31.

"[A]n employee handbook may create a contract altering an at-will arrangement." Nelson v. Charleston Cnty. Parks & Recreation Comm'n, 605 S.E.2d 744, 747 (S.C. Ct. App. 2004) (emphasis added). A handbook forms an employment contract when: "(1) the handbook provision(s) and procedure(s) in question apply to the employee, (2) the handbook sets out procedures binding on the employer, and (3) the handbook does not contain a conspicuous and appropriate disclaimer." Grant v. Mount Vernon Mills, Inc., 634 S.E.2d 15, 20 (S.C. Ct. App. 2006). "When the evidence conflicts or is capable of more than one inference, the issue of whether an employee handbook constitutes a contract should be submitted to the jury; however, a court should intervene to resolve the handbook issue as a matter of law . . . if the handbook statements and the disclaimer, taken together, establish beyond any doubt tha[t] an enforceable promise either does or does not exist." Id.

The primary issue here is whether Brailsford has pleaded provisions and procedures which are binding on defendants. In order for a handbook to alter an

---

[2] Defendants attach copies of various policies and procedures to their motion to dismiss. See Defs.' Mot. Exs. A ("Safety and Security In the Workplace"), B ("Disruptive Patient Behavior and Use of Behavioral Agreement"), C ("Problem Review and Response"). At the motion to dismiss stage, the court can consider a document attached to a motion to dismiss if it is "clearly integral to, and was relied upon in, [the plaintiff's] complaint" and the plaintiff "does not dispute its authenticity." Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). At the hearing, Brailsford asserted that the policies attached to defendants' motion were different than the policies contained in the employee handbook. Therefore, the court will not consider these policies in deciding this motion.

employee's at-will status and create an employment contract, the employer must "phrase[] the document's language in mandatory terms giving rise to a promise, an expectation and a benefit to an employee." Nelson, 605 S.E.2d at 747 (citation omitted); see also Grant, 634 S.E.2d at 20 ("[I]f the language in the handbook sets out mandatory, progressive discipline procedures, those procedures alter the at-will employment relationship."). Such language must be "definitive in nature, promising specific treatment in specific situations." Hessenthaler v. Tri-Cnty. Sister Help, Inc., 616 S.E.2d 694, 698 (S.C. 2005). "When definite and mandatory, [such] procedures impose a limitation on the employer's right to terminate an employee at any time, for any reason." Grant, 634 S.E.2d at 20 (citation and internal quotation marks omitted).

In her response, Brailsford alleges that several policies in the employee handbook are mandatory terms. Pl.'s Resp. 9. As an initial matter, the handbook is not attached to Brailsford's complaint and is not part of the record. Regardless, none of the provisions that Brailsford cites—including those related to sick leave policy and voluntary resignation—"impose a limitation on the [Brailsford's] right to terminate an employee at any time, for any reason." Grant, 634 S.E.2d at 20.

Furthermore, to the extent Brailsford's amended complaint relies on anti-retaliation policies, courts have found such language to be insufficient to form a contract of employment. See Frasier v. Verizon Wireless, No. 8:08-cv-356, 2008 WL 724037, at *2 (D.S.C. Mar. 17, 2008) ("The Defendant's promises that 'everyone should feel comfortable to speak his or her mind' and that '[defendant] prohibits retaliation against employees who, in good faith, submit or participate in the investigation of any complaints' 'do[] not create an expectation that employment is guaranteed or that a

7

particular process must be complied with before an employee is terminated.'"); King v. Marriott Int'l, Inc., 520 F. Supp. 2d 748, 756 (D.S.C. 2007) (finding that the defendant's promise "that 'there will be no discrimination or recrimination' against an employee who asserts a complaint against the Company" was insufficient to alter the employee's at-will employment status).

In sum, to survive the defendants' motion to dismiss with respect to her breach of contract claim, Brailsford "needs to have set forth sufficient factual allegations in [her] [c]omplaint to state a facially plausible claim that the [p]arties entered into a contract with terms of employment that limited the duration of the relationship or the right of termination or both." Weaver, 2013 WL 5587854, at *6. The court finds that, as pleaded, Brailsford has failed to allege that she entered into a contract which "impose[d] a limitation on [defendants'] right to terminate [her] at any time, for any reason." Grant, 634 S.E.2d at 20. Therefore, Brailsford cannot advance a cause of action based on wrongful termination.

The court dismisses Brailsford's breach of contract claim.

**B.    Breach of Contract Accompanied by a Fraudulent Act**

Next, defendants argue that Brailsford fails to state a cause of action for breach of contract accompanied by a fraudulent act. Defs.' Mot. 9.

In order to have a claim for breach of contract accompanied by a fraudulent act, a plaintiff must establish three elements: "(1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach." Conner v. City of Forest Acres, 560 S.E.2d 606, 612 (S.C. 2002). Since Brailsford has failed to plead sufficient factual allegations to establish

the existence of an employment contract beyond the at-will relationship, her claim for breach of contract accompanied by a fraudulent act also fails.  See Amason v. PK Mgmt., LLC, No. 3:10-cv-1752, 2011 WL 1100169, at *6 (D.S.C. Mar. 23, 2011) (dismissing claim for breach of contract accompanied by a fraudulent act where the plaintiff's breach of contract claim failed).

## IV.   CONCLUSION

Based on the foregoing, the court **GRANTS** defendants' motion to dismiss and **DISMISSES** Brailsford's amended complaint without prejudice.

**AND IT IS SO ORDERED**.

                        **DAVID C. NORTON**
                        **UNITED STATES DISTRICT JUDGE**

**July 21, 2015**
**Charleston, South Carolina**